**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEBRA MCCARTHY, DEVIN MCCARTHY, AND OLUWATOMISIN OLASIMBO, | : : : | |
| Plaintiffs | : | |
| v. | : | |
| | : | 3:23-cv-00450-RDM |
| | : | |
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY AND RAUL JAUREGUI, | : : : | On removal from Luzerne County NO.: 2023-01805 |
| Defendants | : | |

## DEFENDANT RAUL JAUREGUI'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS

**Background:**

Daniel Boye has identified a pattern of malice from these plaintiffs and their counsel aiming at denying him his day in court by seizing his right to be represented by a lawyer of his choice.  Mr. Boye's motion for sanctions in the underlying litigation (*McCarthy v Jauregui*, 3:21-cv-01759, Doc. 15, 25, and 29) is pending before Judge Mariani.  Undeterred, these plaintiffs and their counsel have again used this Court to intimidate both Mr. Boye and all of his lawyers; particularly Mr. Jauregui.  Now, repeating their pattern of victimization, these plaintiffs and their counsel, have again sued defendant Mr. Jauregui without a single factual or legal reason to do so, and maliciously ignoring that knowledge *before* filing.  None of these filings make legal sense or are factually accurate.  Thus the conduct from these plaintiffs and their counsel Mr. Dyller stems from their ulterior hateful motive to:

•        Deny Mr. Boye his right to counsel, and defame any counsel who tries to represent Mr. Boye, particularly Mr. Jauregui.

•       Stop the availability of counsel for men defending allegations of misconduct on campuses within the Middle District of Pennsylvania.

**Statement of Relevant Facts**

The relevant facts are sordid because they favor Mr. Boye and his counsel Mr. Jauregui, not any of the plaintiffs in this action or their counsel Mr. Dyller.  All of these facts, as recited here, were known to the plaintiffs *before* filing this action because they obtained the exhibits cited here through their own subpoena to King's College.  (See, **Exhibits B-J** and **L**)

On August 29, 2020, Devin McCarthy, then as now a white female student at King's College, went out partying on campus, and by August 30, 2020, seeming "fine", she ended up having sexual relations with an African American student in Mr. Boye's dormitory. (**Exhibit B**). Devin McCarthy and the African American student then left Mr. Boye's dormitory, and chose to return, because Mr. Boye and his roommate were concerned for their safety.  (**Exhibit C**).  Mr. Boye's roommates described Devin McCarthy before and after she returned to their dorm (**Exhibit C** and **D**) They agree that Devin McCarthy was in control.  She was not incapacitated. Mr. Boye and Devin McCarthy then had sex in his room.  As Devin McCarthy had before, she hurt Mr. Boye's genitals while having sex, something he had told her not to do.  (**Exhibit E**). King's video and photographs (**Exhibit F**) show that the next morning Mr. Boye escorted Devin McCarthy to her dorm.  Much later that day, Devin McCarthy felt ill.  (**Exhibit G**).  She telephoned her mother, Debra McCarthy.  Devin McCarthy then went to the hospital with the third plaintiff, Oluwatomisin Olasimbo and another female King's student.(**Exhibit H**).  The hospital found no drugs or alcohol in Devin McCarthy's blood.  (**Exhibit I**).

From those facts Debra McCarthy's malice spun the pathological fiction that Devin McCarthy had been drugged, and raped by two Latino men, Mr. Boye and his roommate, while excluding any reference to the drunk African American student Devin McCarthy was having sex with on August 30, 2020 in the first place.  That is it.  There is not a scintilla of proof that Devin McCarthy was drugged, or worse, raped because she was not.  To the contrary, and difficult as this may be to understand for the minds of those who think of women like Devin McCarthy as weak, she was the aggressor.  **(Exhibit C, D and E**).  But  Debra McCarthy did not think that, or indeed, did not think at all, defamed Mr. Boye (**Exhibit J**), and ever since, enabled by her counsel, has unleashed a malicious, vexatious, false, and shameful set of filings against Mr. Boye and his counsel, Mr. Jauregui here and in the underlying litigation.

Factually, that record and the conduct in this action, violates Rule 11 in three ways with specifically false averments identified in bold and underlined for reference here:

**FIRST:**        Suing Mr. Jauregui twice, falsely claiming that he had no bases to file a complaint for defamation against plaintiff Debra McCarthy.  Plaintiffs and their counsel knew this was a false claim *before* the filing, because since July 19, 2022 the Pennsylvania Superior Court sustained the defamation complaint because it has bases, stating:

> "Nevertheless, at this early stage of the proceeding, we cannot agree with the trial court that Mr. Boye's "complaint does not aver facts whereby one could find the transmission of the e-mail by [Ms. McCarthy] was actuated by malice or negligence." Trial Court Opinion, 10/19/21, at 5. A reasonable juror could make just such a finding. See Paul, supra.

> This issue affords Mr. Boye full appellate relief."  (**Exhibit K,** p. 16)

Yet, consciously violating their duty of candor, Debra McCarthy and her counsel maliciously certified first in the underlying litigation, and now in their pleadings for this

litigation, that Mr. Jauregui committed the torts of abuse of process or lack of probable cause against Debra McCarthy such that MLM should expand its coverage for this utterly false claim. This is a false pleading of fact because the Superior Court held that the defamation lawsuit has bases. Mr. Jauregui is not a tortfeasor. This truth makes no difference to Debra McCarthy and her counsel who now certified to this Court that Mr. Jauregui injured her:

A.      "To the contrary, Mr. Jauregui was joined by the plaintiffs in the state court action as a necessity under Pennsylvania law. See Pennsylvania Ins. Guar. Ass'n v. Schreffler, 520 A.2d 477, 479 (Pa. Super. 1987) (holding that insured was an indispensable party to a declaratory judgment action between **the injured party** and the insurance carrier)." [Emphasis added]. (Doc. 5, p. 2).

B.      "This statement is not true. **Plaintiffs are parties injured by tortfeasor Jauregui**, MLM's insured." [Emphasis added]. (Doc. 16, p. 5).

C.      "The pending federal litigation is based on different issues, such as **whether Jauregui abused multiple legal processes and caused harm to the plaintiffs**…". [Emphasis added]. (Doc. 20, p. 8).

**SECOND:**    Certifying that Mr. Jauregui's interaction with the King's College disciplinary system makes him liable for abuse of process claims from plaintiff Devin McCarthy and plaintiff Oluwatomisin Olasimbo knowingly misrepresents the law as known to these Plaintiffs and their counsel *before* filing. Mr. Jauregui's work concerning Daniel Boye's claims that Devin McCarthy and Oluwatomisin Olasimbo violated his rights under King's student policy stems from actual evidence in King's files known to the plaintiffs *before* filing. This evidence suggests that Devin McCarthy used sexual violence on Mr. Boye against his stated wishes. (**Exhibit E**).

This violates King's policy.  Oluwatomisin Olasimbo intimidated a witness.  (**Exhibit L**).  This too violates King's policy.

But even if this factual record did not exist, legally, King's College's disciplinary system is a contract, not a "process" that can be "abused" because King's College is not the state, so the tort of abuse of process that these plaintiffs and their counsel insist on invoking against Mr. Jauregui to make him "indispensable" does not apply.  As the Third Circuit succinctly put it, King's adherence to Title IX does not give rise to an abuse of process tort because Title IX establishes a contractual relationship without mandates:

> "Congress enacted Title IX under its Spending Clause powers, making it in the nature of a contract: In accepting federal funds, States agree to comply with its mandate. Jackson v. Birmingham Board of Education, 544 U.S. 167, 181-182 (2005). Given its origins, Title IX's only (express) enforcement mechanism is through agencies' regulation of federal funding. Congress directs agencies to effectuate § 1681(a) by, among other means, the "termination of or refusal to grant or to continue" funding to education programs. 20 U.S.C. § 1682; see Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255 (2009)."

*Doe v. Mercy Catholic Medical Center*, 850 F. 3d 545, 553 (3d Cir. 2017).

These plaintiffs and their counsel knew this is the law because they learned that student discipline is a contract as part of Mr. Boye's reply in his motion to dismiss the underlying litigation (*McCarthy v Jauregui*, 3:21-cv-01759, Doc. 17) which cited *Doe v. Mercy*.  That is, they knew *before* filing this satellite action that abuse of process, the tort they invoked against Mr. Jauregui here to make him "indispensable", does not exist in private contracts.  Yet, they still went ahead and maliciously certified either that Mr. Jauregui was liable for abuse of process, or that he was an indispensable party for MLM to extend coverage on their false claim, given Devin McCarthy and Oluwatomisin Olasimbo's bald accusations of tortious abuse of process:

A.      "The pending federal litigation is based on different issues, such as **whether Jauregui abused multiple legal processes and caused harm to the plaintiffs**,..." [Emphasis added]. (Doc. 16, p. 7).

B.      "Given Mr. Jauregui's status as an **indispensable party** under Pennsylvania law, this Court lacks subject matter jurisdiction over the instant case…" [Emphasis added]. (Doc. 5, p. 2).

C.      "To the contrary, under Pennsylvania law Mr. Jauregui was joined by the plaintiffs as **a necessity**." [Emphasis added]. (Doc. 6, p. 2).

**THIRD:**      The claim that Mr. Jauregui is not fraudulently joined in this action is absurd and malicious.  As MLM briefed, (Doc. 17), even if Mr. Jauregui was guilty of any of the non-existent torts that these plaintiffs falsely invoke against him, which he is not, he is still not "indispensable" as a party to this declaratory judgment action under state or federal law.  The proper party for declaratory judgment, even assuming this was a proper lawsuit, which it is also not, would be the insured, The Jauregui Law Firm, not Mr. Jauregui.  And as Mr. Jauregui briefed, (Doc. 18) "The Jauregui Law Firm" is an unincorporated association which makes it a legal entity.  All this was known to these plaintiffs and their counsel *before* filing this action and they still went ahead and maliciously certified that there was reason to join Mr. Jauregui instead of the only insured, The Jauregui Law Firm.  For example:

A.      "...joinder of Jauregui was further proper **because Jauregui Law Firm is not a legal entity**."  [Emphasis added].  (Doc. 16, p. 4).

B.      "The joinder of Jauregui was not fraudulent; it was required under Pennsylvania law. See *Pennsylvania Ins. Guar. Ass'n v. Schreffler*, 520 A.2d 477, 479 (Pa. Super. 1987) (holding that

*insured* was an indispensable party to a declaratory judgment action between the injured party and the insurance carrier)." [Emphasis added].  (Doc. 10, p. 1-2).

C.    "Aside from **the fact that Jauregui Law Firm is not a legal entity** (See Exhibit A, attached hereto)...". [Emphasis added]. (Doc. 20, p. 4).

**Legal Framework:**

Rule 11(c)(2) makes it clear that when plaintiffs and their counsel receive a notice and reasonable opportunity to correct or respond to the violations in that notice, and fail to do so after 21 days, then the Court determines if the plaintiffs and their counsel have violated Rule 11(b) and may impose a sanction.  When, as here, malicious litigants and their counsel fail to avail themselves of the Rule 11(c) safe harbor, then, as Judge Brann of the Middle District of Pennsylvania has made it clear, the legal framework of Rule 11 sanctions consists of and aims to:

> "The Supreme Court and the Third Circuit have developed a consistent jurisprudence as it pertains to Rule 11 Sanctions. "It is now clear that the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts."[162] "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose."[163] "[T]he rule emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable."[164] "The word `sanctions' in the caption ... stresses a deterrent orientation in dealing with improper pleadings, motions or other papers."[165] "[T]he intended goal of Rule 11 is accountability."[166]
>
> "The standard for testing conduct under Rule 11 is reasonableness under the circumstances."[167] "The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to `stop, look, and listen.'"[168] "It may be rephrased, `Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation."[169]

… Rule 11 Sanctions are appropriate, for instance, "when the claimant exhibits a deliberate indifference to obvious facts."

*Young v. Smith*, 269 F.Supp. 3d 251, 332-333 (MDPA, 2017) (Collecting cases in the footnotes, and imposing monetary sanctions on "vexatious" counsel with "unstable" behavior).  Further, as Mr. Jauregui seeks here, in terms of non-monetary sanctions, Rule 11 jurisprudence is settled: "Moreover, the guiding purpose in fixing Rule 11 sanctions is fashioning a sanction adequate to deter undesirable future conduct." *DiPaolo v. Moran*, 407 F.3d 140, 146 (3d Cir. 2005). … This discretion extends both to the decision to impose sanctions, and the determination of what an appropriate sanction may be. Id." *Andresen v. Pennsylvania*, 1:20-cv-989, 10-11 (MDPa. Mar. 16, 2022). The sanctions Mr. Jauregui seeks here are non-monetary and meant to protect the public of the Middle District.

**<u>Argument:</u>**

These plaintiffs and their counsel want to end the availability of legal representation for all respondents of on campus sexual misconduct in the Middle District of Pennsylvania, not just for Mr. Boye.  To accomplish that malicious goal these plaintiffs and their counsel have gone out of their way to create a public record that consistently misrepresented the facts, ignored the law, and scoffed at the notion that they should correct their pleadings to not rule afoul of Rule 11. Thus this motion.  On this record, there is little doubt that plaintiffs and their counsel have shot at Mr. Jauregui, the messenger of Mr. Boye's pleas for fairness, just to impede future access to this equally protected fairness to Mr. Boye and others.  On this record it is clear that these plaintiffs and their counsel know there is no law or fact supporting any claims against Mr. Jauregui in the underlying litigation and thus absolutely no grounds to sue him and MLM to expand coverage.

This record of plaintiffs and their counsel's conduct meets every single one Rule 11's elements that thus demand the imposition of the minimal sanctions sought.  The plaintiffs and their counsel sued Mr. Jauregui knowing the facts and the law did not support their claims.

Debra McCarthy knew that there are bases to sue her for defamation because the Pennsylvania Superior Court told her so.  Yet she still is suing Mr. Jauregui, falsely calling herself *"injured party"* while seeking declaratory judgment against Mr. Jauregui whom she falsely calls "*tortfeasor*".  (See Docs. 5 and 16). Those terms, "*injured party*" and "*tortfeasor*" would only be true if the Superior Court had found that this was a baseless lawsuit.  It found exactly the opposite.

Devin McCarthy and Oluwatomisin Olasimbo knew that any contact that Mr. Jauregui had with King's College alleging that these plaintiffs violated King's Student Code of Conduct is not a legal process, but a private disciplinary experience because the Third Circuit told them so in *Doe v. Mercy*, id. Yet they are still falsely suing Mr. Jauregui, accusing that he "*abused multiple legal processes*" while calling him "*an indispensable party*" as well as "*a necessity*" to seek declaratory judgment against MLM under a tort that does not apply.  (See Docs. 16, 6 and 6).  The abuse of process claim would only be possible if the *Mercy* decision said that Title IX creates an obligation to litigate.  Instead it says that King's and other schools are not courts for litigation, or quasi-litigation boards when they enforce their disciplinary code adhering to Title IX.  And even if school discipline became state action, Mr. Jauregui did not abuse it.  (See, e.g., **Exhibit E, L**).  Thus the claims under the tort of abuse of process are legally untenable and factually false as stated.

The five certified pleadings where these plaintiffs and their counsel Mr. Dyller have knowingly stated false facts and false laws are docket document numbers 5, 6, 10, 16 and 20. Consistently, these five pleadings falsely describe Mr. Jauregui as either not practicing through a "*legal entity*" or else as the "*insured*."  Seen individually, together, or merged with Mr. Boye's own motion for sanctions (*McCarthy v Jauregui*, 3:21-cv-01759, Doc. 15, 25, and 29), it is inescapable that these pleadings conform to a pattern of falsehood, and that this Court must impose Rule 11 sanctions to deter more of these baseless filings.  Clearly these plaintiffs and their counsel Mr. Dyller violated their duty to conduct a reasonable inquiry before filing Docs. 5, 6, 10, 16 and 20 because each of them knew, *before* filing these documents, that none of the pleadings had grounds in fact, or existing laws that supported any single one of their claims against Mr. Jauregui who never lacked bases to sue Debra McCarthy, that he did not enter into any process and even less abused the King's disciplinary system against Devin McCarthy and Oluwatomisin Olasimbo as well as that Mr. Jauregui practices through an unincorporated association, The Jauregui Law Firm which is insured by MLM.

These same four maliciously certified pleadings appear in the public docket--and in the related Google indexed links--for an improper purpose: To defame Mr. Jauregui and to chill the availability of counsel to any respondent of sexual misconduct in the Middle District of Pennsylvania.  To accomplish that purpose these plaintiffs and their counsel further violated their ongoing duty of candor to this Court choosing to not correct their pleadings during the 21 days they had to consider this motion for sanctions.  Since the goal of Rule 11 is accountability, and because none of the five certified pleadings identified in this motion could have been reasonably certified at the time of filing, Rule 11 sanctions must be issued.

**WHEREFORE**, defendant Raul Jauregui moves this Court to grant the sanction requested.

Respectfully submitted,

_____

Raul Jauregui

Dated:  May 2, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEBRA MCCARTHY, DEVIN MCCARTHY, AND OLUWATOMISIN OLASIMBO, | : : : | |
| Plaintiffs | : | |
| v. | : : | 3:23-cv-00450-RDM |
| | : | |
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY AND RAUL JAUREGUI, | : : : | On removal from Luzerne County NO.: 2023-01805 |
| Defendants | : | |

**Certificate of Service**

I Raul Jauregui certify that on April 10, 2023 I served a copy of this motion via email for review pursuant to Rule 11's provisions 21 days before it was filed with this Court. I served the original of this motion as filed on the same counsel through ECF on May 1, 2023. Counsel served with both a copy for 21 day review and with the filed motion include:

Susan French

Hema Mehta

Tara Giaratano

Barry Dyller

Respectfully submitted,

_____

Raul Jauregui

Dated: May 2, 2023.