IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA MCCARTHY, DEVIN MCCARTHY, AND OLUWATOMISIN OLASIMBO, | : : : | |
| Plaintiffs | : | |
| v. | : : | 3:23-cv-00450-RDM |
| | : | |
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY AND RAUL JAUREGUI, | : : : | On removal from Luzerne County NO.: 2023-01805 |
| Defendants | : | |

**Defendant Raul Jauregui's Objections to Magistrate Carlson's Report and Recommendations of June 5, 2023**

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and Local Rule 72.3, in pro se defendant Raul Jauregui respectfully submits the following objections to the Report and Recommendation issued by the Honorable United States Magistrate Martin C. Carlson on June 5, 2023 (the "Carlson Report 1").

**Introduction:**

These plaintiffs and their counsel Barry Dyller initiated two lawsuits with malice. They filed the first in this Court, Civil No. 3:21-CV-1759. Then they filed a second even more outrageous one, prematurely seeking more insurance coverage for the frivolous claims baldly stated in the first one. Oddly, they filed the second lawsuit not in this Court where their original suit lies, but in the Luzerne County Court of Common Pleas, captioned No. 3:23-CV-00450 upon removal to this Court. They are so desperate to remand this second lawsuit to Luzerne County that they have engaged in conduct that triggered a Rule 11 motion to obtain that removal.

Overall, both these bald cases must be adjudicated in this Court. These cases do not share just the plaintiffs' and their counsel's malice in common, they also have the same nucleus of operant facts--the first one is frivolous, the second one prematurely seeks more insurance coverage for the frivolous one. These cases also pit two white female plaintiffs, Devin McCarthy and her mother Debra McCarthy, and their white counsel, Barry Dyller, against two Latinos--the defendants Mr. Boye and his lawyer Mr. Jauregui. In the United States, these litigants cannot be treated differently. Yet, thus far, they have been. That disparate record also demands that these cases be decided together in this Court.

Sadly, at a time when the news media is flooded with information about the inconvenient relationships of judges and their duty to self-police[1], these plaintiffs and their counsel, Barry Dyller, received indulgence for their sanctionable conduct through both recommendations from Magistrate Carlson, who baldly found that while their frivolous claims could continue in Federal Court, their Rule 11 sanctionable behavior should be remanded to the Luzerne County Court of Common Pleas. By coincidence, no doubt, and yet completely ignored in the Carlson reports, Barry Dyller's wife is the Honorable Lisa Gelb, a sitting judge of that Court. Thus, when Magistrate Carlson recommends remand, he shifts the burden of analyzing the sanctionable conduct of these plaintiffs and their lawyer, Barry Dyller, consisting of their pleadings in this Court, on a colleague of Barry Dyller's wife, or perhaps actually on Barry Dyller's wife.

Worst of all, the Carlson Report 1 cuts and pastes a catch phrase from its factually and legally mistaken earlier recommendation in McCarthy, et al., v. Boye, [Carlson Report 2 of June 2, 2023]. Instead of addressing this record which suggests anti-Latino bias through comparator evidence, both of the Carslon reports oddly proclaim that these cases are not about reverse

---

[1] Erwin Chemerinsky, "Time is Running Out for John Roberts and the Supreme Court", New York Times, June 12, 2023.

gender discrimination, but rather they involve "claims of litigation misconduct which played out against the backdrop of a highly charged, emotionally divisive issue: sexual violence on a college campus." **Not so.  Sexual violence on campus is not highly charged or emotionally divisive.  Sexual violence on campus is abhorrent.  Mr. Jauregui and Mr. Boye deplore it.**

It is the responsibility of those who run the campus--usually the Title IX office--to prevent, investigate, and adjudicate such violence. This is why King's investigated when Mr. Boye filed a sexual violence complaint against Devin McCarthy. This is why Kings' suggested that Mr. Boye file a Title IX complaint that Ms. Olasimbo intimidated witnesses.  While none of that constitutes "process," clearly, all of that and any other sexual violence on campus must be addressed, so it is odd that the Carlson reports characterize this as an emotionally divisive issue. Further, to help achieve that legitimate educational goal, the eradication of sexual violence on campus, lawyers like Mr. Jauregui advice on the application of laws, private harassment policies, Title IX regulations, and facts (as stated through the mouths of college aged persons riddled with shame and sadness), to notions inherent to sexual violence, like incapacitation and consent.

Yet here, the Carlson Reports 1 and 2 ignore the dispositive evidence lacking from these cases:  Devin McCarthy was never assaulted because there is no evidence that she was incapacitated.  Absent her incapacitation, there is no evidence that Devin McCarthy did not consent to sexual contact with Mr. Boye.  And that evidence cannot be presumed in her favor because it simply does not exist.  The plaintiffs and their counsel knew all of this *before* filing these actions.  Yet they went ahead and did so. Later, Mr. Jauregui asked them to use Rule 11's safe harbor.  They refused to do so and thus far, have lucked out, given the fatal mistakes in the Carlson reports.  Thus, the rest of this record is not glib highly charged or emotionally divisive

discussions of sexual violence on campus, but rather a sordid tale of systemic gender and race motivated disparate outcomes, and of malice against Mr. Boye and his counsel, Mr. Jauregui.

The eradication of sexual violence on campus requires apt lawyers for all parties. But the confluence of the factual and legal mistakes in both of the Carlson Reports with these plaintiffs' and their counsel's malice chills the availability of legal counsel like Mr. Jauregui, who works with respondents of sexual misconduct enrolled in schools within the Middle District of Pennsylvania. This chilling effect recalls the lack of effective representation for other young men in Luzerne County's recent past which was, no doubt, one of the contributing factors to the "Kids-for-Cash" scandal. These lawsuits, and the mistakes in the Carlson reports, have set back the clock on the effort to eradicate sexual violence on campus in this District. Thus, the Carlson reports must be rejected, while these plaintiffs' claims must be dismissed, and their counsel, Barry Dyller, must be sanctioned for he violated Rule 11 as an officer of this Court.

## Statement of Specific Objections

Mr. Jauregui objects to the Carlson Report 1's denial of this petition for removal in general, and in specific to several mistaken parts of it, including its failure to consider that jurisdiction or not, these plaintiffs and their counsel violated Rule 11 while in this Court.

Because these cases are indistinguishably blended and related to the same nucleus of operant facts, so are the Carlson 1 and 2 reports. All of the mistakes of the Carlson Report 2 cause some of the mistakes in the Carlson Report 1. These cases must be adjudicated, and dismissed with prejudice, together. Likewise, the Carlson Reports must be rejected together.

**(a)** **Mr. Jauregui objects to the entire Carlson Report 1, and specifically to these findings of fact:**

•	"...another defendant arising out of claims of litigation misconduct which played out against the backdrop of a highly charged, emotionally divisive issue: sexual violence on a college campus.  McCarthy, et al., v. Boye, et al., Civil No. 3:21-CV-1759." (1).

•	"The plaintiffs filed this lawsuit in state court on February 13, 2013 as part of an apparent effort to determine scope of Minnesota Lawyers' insurance coverage…".  (2).

•	"Consistent with state declaratory judgment practice, the plaintiffs named both the insurance company, Minnesota Lawyers, and the insured, Raul Jauregui,..."  (2).

•	"Additionally, the motions to dismiss and for sanctions seek merits determinations from us regarding the underlying claims in this case." (3).

•	"Thus, where a properly joined named defendant in a state court lawsuit is a citizen of the state in which the action is brought, removal of that lawsuit to federal court is generally forbidden unless it can be shown that the joinder of the named in-state defendant was somehow fraudulent." (6).

 **(b)	Mr. Jauregui objects to all the conclusions of law in the Carlson Report 1, and specifically to:**

•	"For the reasons set forth below, upon consideration of these issues it is recommended that we first address the motion to remand, and it is further recommended that this motion be granted." (4).

•	"Finally, in light of this recommendation, we recommend that the court refrain from addressing any other pending motions." (4).

•	"Judged against these legal guideposts, we conclude that Minnesota Lawyers has not carried its heavy burden of showing that the joinder of Raul Jauregui in this state court declaratory judgment action was fraudulent." (7-8).

- "...and recognizing the settled body of state case law which deems insured parties to be indispensable to state court insurance coverage declaratory judgment actions, we find that Minnesota Lawyers Mutual Insurance Company has not carried its heavy burden of proving that the joinder of Raul Jauregui in this state court lawsuit was fraudulent." (8-9).

**(c)     Mr. Jauregui, for the purposes of objecting to the Carlson Report 1, objects to these fatally flawed findings in the Carlson Report 2 because they are incorporated into and cause many of the mistakes of law or fact in the Carlson Report 1:**

<u>Impermissibly expanding the definition of the abuse of process tort in Pennsylvania and thus allowing Counts III and IV of the Amended Complaint in No. 3:21-CV-1759:</u>

- "Having concluded that abuse of process claims under Pennsylvania law embrace certain types of quasi-judicial disciplinary hearings, we have little difficulty concluding that a Title IX disciplinary hearing would constitute the type of process encompassed by this tort." (Carlson Report 2, 29).

- "Therefore, these disciplinary hearings establish the legal rights, duties, or privileges of a party after a process that embodies the attributes of judicial proceedings. As such, they are—and should be deemed to be—the type of legal process which, if abused, gives rise to an abuse of process claim." (Carlson Report 2, 30).

<u>Mistaking the definition of outrageous conduct to include cross-claims under Kings' Policy and thus allowing Count V of the Amended Complaint in No. 3:21-CV-1759:</u>

- "Fairly construed, this complaint alleges that the defendants did precisely what the commentary to the Restatement indicates is an intentional infliction of emotional distress since Boye and Jauregui are alleged to have falsely accused Ms. McCarthy of sexual misconduct." (Carlson Report 2, 24).

<u>Ignoring that Once the Superior Court Sustained the Defamation Action, Count II of the Amended Complaint in No. 3:21-CV-1759 will Never Meet the Elements for Abuse of Process:</u>

• "... the plaintiffs have sufficiently stated common law abuse of process claims arising out of what are alleged to have been false Title IX complaints, Title IX counterclaims, and civil lawsuits filed for the purpose of intimidating the plaintiffs and deterring them from pursuing rape claims against Boye." (Carlson Report 2, 25).

**WHEREFORE**, Mr. Jauregui incorporates to these objections an accompanying memorandum of law and moves this Court to reject both the Carlson Reports, to conduct de novo review as provided under the Magistrate Act, and to engage in the work required to properly dismiss these cases with prejudice, to then adjudicate Mr. Jauregui's Rule 11 motion and its humble petition for remedy-- not money, but rather, an apology from these plaintiffs and their counsel; something no judge in the Luzerne County Court of Common Pleas, particularly not Barry Dyller's wife, the Honorable Lisa Gelb, should have to adjudicate.

                                        Respectfully submitted,

                                        _____
                                        Raul Jauregui

Dated: June 16, 2023.