IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA MCCARTHY, DEVIN MCCARTHY, AND OLUWATOMISIN OLASIMBO,<br>　　Plaintiffs<br>v.<br><br>MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY AND RAUL JAUREGUI,<br>　　Defendants | 3:23-cv-00450-RDM<br><br>On removal from Luzerne County<br>NO.: 2023-01805 |

**Defendant Raul Jauregui's Memorandum of Law in Support of his Objections to Magistrate Carlson's Report and Recommendations of June 5, 2023**

In support of his objections to the Carlson Reports, Mr. Jauregui submits this memorandum of law.

**Procedural History of the Present and Related Litigation in this District:**

The results of the Carlson Reports are mistaken factually and legally in that:

Carlson Report 1 remands to Luzerne County denying the motions to dismiss the plaintiffs' premature and falsely stated action for declaratory judgment. Carlson 1 also specifically avoids any discussion of the entire record of Rule 11 violations from these plaintiffs and their counsel which Mr. Jauregui documented with granular detail.

Carlson Report 2, in contrast, allows the illegitimate and at best premature claims from these same plaintiffs and their counsel to proceed--these are the very claims for which they sought the declaratory judgment that Carlson 1, in contrast, remands. Once again, Carlson 2 mistakes the facts for the motion for inherent sanctions that Mr. Boye presented and dismisses it, but allows the claims from the white plaintiffs and their counsel to proceed.

Mr. Jauregui, through his counsel, Gene McGinnis, has filed separate objections to the Carlson 2 report. This is Mr. Jauregui's pro-se objection to the Carlson 1 report which inheres objections to the entire Carlson 2 report the mistakes of which poison the Carlson 1 report.

### The Carlson's Report 1 of June 5, 2023.

The Carlson Report 1 is fatally flawed as it adopts as part of its recommendation for remand the mistaken recommendations in its Report of June 2, 2023 for McCarthy, et al., v. Boye, et al., Civil No. 3:21-CV-1759. [Carlson Report 2]. Yet the Carlson Report 2 is so different from the established law, and from what even the most slender facts interpreted in plaintiffs' favor support, that it creates new, bad, law that if adopted as the Court's ruling would be quickly reversed by the 3rd Circuit. The Carlson Report 1 fails to read the briefing, and it also incorporated the Carlson Report 2 which, in turn, clashes with the legislative history of Title IX, with the weight of appellate circuit authority on the non-state actor quality of Title IX compliant student discipline at schools in the United States, with Pennsylvania's requirement of state action for the tort of abuse of process to apply, with Pennsylvania's unique version of the Restatement of Torts' definition of the outrageous conduct in IIED and with the tort of abuse of process as it concerns the defamation lawsuit which cannot ground such abuse.

The Carlson Report 1 wrongly finds that Mr. Jauregui is the insured, which he is not, and makes no analysis of the sanctionable conduct identified in the Rule 11 motion, which occurred through filings in this Court, preferring to remand that issue to the Luzerne County Common Pleas judges, all of whom are colleagues of Barry Dyller's wife, the Honorable Lisa Gelb.

### Standard of Review Under the Magistrate Act

A district court reviews de novo all portions of a magistrate judge's recommendation to which a party has properly objected. See Fed. R. Civ. P. 72. The district court may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge," or may "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).  See also, 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3070.2 (2d ed. 2017) (a district judge "must not . . . rubber stamp" magistrate's facts and legal conclusions when conducting de novo review).  The standard of review for motions to dismiss under Fed. R. Civ. P. 12(b)(6) stated in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d. Cir. 2009) is incorporated here and boils down to complaints having to show their entitlement to relief with facts.

## Argument

These cases are blended and cannot be analyzed separately, not only do they share the same nucleus of operant facts, they drip with the same malice from these plaintiffs and their counsel.  Further, these cases became indistinguishably blended on removal, not only because Mr. Jauregui's Rule 11 motions document impermissible conduct in this Court that put all the issues in No. 3:21-CV-1759 at play in the removal and motion to dismiss, but also because the Carlson Report 1's mistakes of law and fact exist because it incorporates the Carlson Report 2's mistakes of law and fact.  These cases must be dismissed, with prejudice, together, just as the Carlson Reports must be rejected, together.  Only the Rule 11 sanctions must be heard.

This is Mr. Jauregui's formal objection to the Carlson Report 1, as buttressed with all the other formal objections to the Carlson Reports, all pursuant to Fed. R. Civ. P. 72.

**1.     These Lawsuits Cannot be Evaluated Separately Because this Declaratory Judgment Lawsuit Incorporated, Depends on, Stems from, and Seeks to Alter the Underlying Lawsuit for Abuse of Process and IIED.**

It is a systemic mistake of fact and law fatally flawing the entire Carlson Report 1 to find on the one hand that this lawsuit is about the scope of insurance coverage for the abuse of process and IIED lawsuit, and remand it, because this remand recommendation depends on and incorporates the glaring mistakes of law and fact in the Carlson Report 2. Those mistakes include the finding that Kings Policy constitutes legal process, that using Kings Policy is an outrage that caused IIED, and that the defamation lawsuit against Debra McCarthy, which the Superior Court of Pennsylvania sustained, is abuse of that process. Simply put, the Carlson Report 1 Recommendation, at p. 3 that it cannot make findings on the merits, belies the fact that it adopted the mistaken evaluation of the merits in the Carlson Report 2:

> "In this regard, both case law and the text of the removal statutes suggest that we should first address the jurisdictional questions before foraying into any merits analysis."

Ironically, as seen below, even on jurisdictional issues, the Carlson Report 1 also makes mistakes that impermissibly favor the plaintiffs. As if fruit from the poisoned tree, the mistakes in the Carlson Report 1 stem in part from these three mistakes (a-c below) in the Carlson Report 2. This is why both reports must be rejected together and why these cases must be dismissed.

**(a)      Kings College is not the State so it has no Process.**

The Carlson Reports would have reached an opposite and correct recommendation if each of them applied the proper legal conclusion: Kings' College's Policy does not make it a state actor, so there is no abuse of process. This means that the bulk of both lawsuits needs to be dismissed as their claims for abuse of process (allowed in Carlson Report 2), or for declaratory judgment on the coverage of that alleged abuse of process (remanded in Carlson Report 1), are impossible at law.

The Carlson Reports ignore the fact that Kings is a private actor. As recently as February 14, 2023, the 6th Circuit rejected the Carlson Report 2's view that a school like Kings becomes a state actor when it enforces its discipline pursuant to Title IX.   In *Doe v. Oberlin*, (No. 20-3482, 6th Cir., Opinion of Feb. 14, 2023, at 10) the 6th Circuit found that:

> "Without "evidence that 'the federal government participated in the proceedings against the plaintiff, or dictated the specific finding of responsibility in th[e] case,'" the private university's conduct was not state action. Id. (quoting Case W. Rsrv. Univ., 2017 WL 3840418, at *9). ***The weight of case law, both within and outside the Sixth Circuit, concludes that private colleges are not transformed into state actors while conducting Title IX investigations.*** See, e.g., id. at 275; Heineke v. Santa Clara Univ., 965 F.3d 1009, 1014 (9th Cir. 2020); Doe v. Univ. of Denver, 952 F.3d 1182, 1188 (10th Cir. 2020); see also Case W. Rsrv. Univ., 2017 WL 3840418, at *10 (collecting cases)."   [Emphasis added].

Since at least 2005, the 3rd Circuit has required the same state actor evidence for quasi-judicial status to attach to school disciplinary proceedings.  Yet this is what the Carlson Report 2 fails to address, and why it mistakes the law that led to the Carlson Report 1's conclusion that remand is proper and that there is no need to address the motion for Rule 11 sanctions--because in this concatenation of mistakes the Carlson Report 2 wrongly finds that these plaintiffs and their counsel did not act frivolously.  Absent the mistakes in the Carlson Report 2 it is clear that they did.  For one thing, the plaintiffs will never meet the state actor element because Kings is a school, not the state.  Their declaratory judgment action is clearly frivolous, if nothing else because there is no state action, so there is no process to be abused. In *Overall v. The University of Pennsylvania*, 412 F.3d 492, 497 (2005), now Justice Alito held that:

> "The District Court misapprehended the essence of quasi judicial proceedings. While "applying law to facts" is undeniably an attribute of such proceedings, ***our research reveals that under Pennsylvania law government involvement is also a necessary condition for according quasi-judicial status to grievance procedures***…We have not found a single Pennsylvania case according quasi judicial status to entirely private hearings. Rather, Pennsylvania cases finding quasi-judicial privilege consistently involve

proceedings before federal, state, or local governmental bodies, or proceedings held pursuant to a statute or administrative regulation." (id). [Emphasis added].

Instead of following the actual law in Overall, Oberlin, and elsewhere, the Carlson Report 2 mistakenly finds that as a matter of law, because the private procedures to enforce Kings' discipline could resemble a hearing, they are "process."

**(b)      IIED Requires an Outrage Which Does not Happen by Following Kings' Policy.**

The Carlson Reports would have reached an opposite and correct recommendation if each of them applied the proper legal conclusion: Mr. Jauregui's use of Kings' College's Policy does not meet Pennsylvania's definition of the Tort of IIED.  This means that the bulk of both lawsuits needs to be dismissed as their claims for IIED (allowed in Carlson Report 2), or for declaratory judgment on the coverage of that alleged IIED (remanded in Carlson Report 1), are impossible at law.

In the RESTATEMENT (SECOND) OF TORTS § 46 (1965), the basic elements are: (1) extreme and outrageous conduct that (2) intentionally or recklessly (3) causes severe emotional distress. Pennsylvania, however, follows this modified version: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997), aff'd 554 Pa. 134 (1998).  The Carlson Report 1 incorporates the mistakes in the Carlson Report 2 when it finds that remand is adequate, which grants indulgence to these plaintiffs for their frivolity and refusal to abide by the Rule 11 safe harbor.  In reality, no facts exist that satisfy Devin McCarthy's burden under elements (1), and (4) of the tort.  Thus the claim fails and has no remedy at law.  To have continued to state so violated Rule 11, and the only bar to that finding is the mistakes in the Carlson Report 2 as incorporated into the Carlson Report 1 remand recommendation.

Under element No. 1 of the IIED tort, Mr. Jauregui's only conduct--his filing of a complaint with Kings that in prior sexual encounters Devin McCarthy hurt sensitive parts of Mr. Boye's genitals against his stated wishes--is not outrageous. That complaint satisfies the legitimate interest of Kings' Policy, and is the same contractual right that Devin McCarthy invoked. Given that it is the "duty of the court to determine, in the first instance, whether the defendants' conduct could reasonably be regarded as so extreme and outrageous as to permit recovery." *Wells v. Thomas*, 569 F.Supp. 426, 433 (E.D. Pa.1983) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–74 (3d Cir. 1979). The claim for IIED has no remedy at law, yet the Carlson Report 2 mistakenly points to a 1926 case from Minnesota, *Johnson v. Sampson,* 208 N.W. 814, 815-16 (Minn. 1926), and to the related Restatement comment (e), which, to apply, would require a non-existent power relationship. Mr. Boye and Devin were equals, peers in the same cohort of students at Kings.

Under element No. 4 of the IIED tort, the Carlson Report 2 also mistakes the source for the alleged severe distress required of Devin McCarthy's experience. The Carlson Report 2 says that Mr. Jauregui's filing of a complaint, a purely administrative act under Kings Policy, caused Devin the same distress as that she claims from her sexual assault allegation. This is factually and legally impossible because the severity of one allegation's distress does not transfer to the other. No complaint causes the severe distress of an alleged sexual assault. The complaint may have caused "emotional distress" under element No. 3 of the tort of IIED, but not "severe" distress as needed under No.4. Thus the IIED claim fails.

**(c)     Count II is Legally Impossible as There is no Abuse of that Process After the Superior Court Sustained the Defamation Lawsuit**.

The Carlson Reports completely ignore, and thus mistake in fact and at law, what Mr. Boye states in his motion to dismiss: That the amended complaint, at Count II, lacks the facts required to plausibly state abuse of process connected with the defamation per se lawsuit (which actually is "process" that can be "abused", unlike Kings' policies) because the Superior Court already sustained that action.

Count II has no remedy at law. Debra and even more so Devin McCarthy (who is not even a party to that action) will always fail to allege what does not exist, the tort's requirement of "[s]ome definite act or threat not authorized by the process...or used for an illegitimate aim, such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." *Al Hamilton v. Cowder*, 644 A.2d 188, 191 (1994). There can be no liability where, as is the case here, the defendants have done nothing more than "carry out the process to its authorized conclusion, even though with bad intentions." *Shaffer v. Stewart*, 326 Pa. Super. 135, 137, 473 A.2d 1017, 1018 (1984); *Di Sante v. Russ Financial Co.*, 251 Pa. Super. 184, 189, 380 A.2d 439, 441 (1977). All Mr. Jauregui and Mr. Boye have done is file a defamation lawsuit, only against and based on Debra McCarthy's own words, which the Pennsylvania Superior Court sustained. There is no abuse. No facts exist to aver that in terms of the defamation action Mr. Jauregui and Mr. Boye used this lawsuit for any reason other than to clear Mr. Boye's name of the defamation he suffered from Debra McCarthy, which is "the legitimate object of the process." *McGee v. Feege*, 535 A.2d 1020, 1026 (1987). Dispositively, and again, completely ignored in both the Carlson Reports, no facts exist that can plausibly allege that Mr. Boye's defamation lawsuit against Debra McCrthy is not what it is: Legal process to accomplish the purpose of a defamation lawsuit. *Rosen v. American Bank*, 426 Pa.Super. 376, 381 (1993). This basic element of the tort will never exist because the Superior Court sustained the defamation lawsuit.

The fatally flawed allegations that the Carlson Report 2 allows to continue for Count II, and which the Carlson Report I adopts, would require evidence that the Defendants are not suing Debra McCarthy to adjudicate her slander of Mr. Boye, or better, that her slander did not occur. No such pleading is possible; it is actually absurd. Mr. Boye, who will try his case against Debra McCarthy because his ultimate objective is what a defamation lawsuit grants a plaintiff: The opportunity to clear his name from her defamation with a jury verdict. *Hart v. O'Malley*, 436 Pa. Super. 151, 647 A.2d 542. aff'd 544 Pa. 315, 676 A.2d 222 (1996); *Egnal v. Freidman*, 47 Pa. D. & C.2d 751 (Pa. Com. Pl. 1969). There is no abuse. Claim II must be dismissed, with prejudice.

**2.     Mr. Jauregui's Invocation of Rule 11 Further Blended the Two Cases in This Court:**

The Carlson Report 1 refused to analyze Mr. Jauregui's Rule 11 filings about conduct that occurred in front of this Court. The Rule 11 filings incorporated into this case the frivolity and malice of these plaintiffs and their counsel in their abuse of process and IIED lawsuit.

The sanctionable conduct consists of conduct in this case, in this Court, from an officer of this Court, Barry Dyller. The Carlson Report 1 recommendation that this Court refrain from Rule 11 analysis must be rejected. **First**, it is based on the false premise that the Rule 11 motion requires findings of merits rather than conduct. **Second**, it adopts the mistakes that riddle the findings of fact and conclusions of law in the Carlson Report 2. This is not supposed to happen in a court of the United States. Rather, this Rule 11 motion requires finding that on this blended factual record, sanctions must issue because of the conduct from these plaintiffs and their counsel Barry Dyller in this Court during remand--which they insisted on even after receiving a Rule 11 safe harbor notice while in this Court incorporated the frivolous malice in the underlying litigation. As a result, on remand, the sanctionable conduct consists of:

> "The five certified pleadings where these plaintiffs and their counsel Mr. Dyller have knowingly stated false facts and false laws are docket document numbers 5, 6, 10, 16 and

20. Consistently, these five pleadings falsely describe Mr. Jauregui as either not practicing through a "legal entity" or else as the "insured." Seen individually, together, or merged with Mr. Boye's own motion for sanctions (McCarthy v Jauregui, 3:21-cv-01759, Doc. 15, 25, and 29), it is inescapable that these pleadings conform to a pattern of falsehood, and that this Court must impose Rule 11 sanctions to deter more of these baseless filings.`` (Doc 24-2, 10).

Thus, the recommendations in the Carlson Report 1 that this Court abdicate its duty to enforce Rule 11 and remand those claims to the Honorable Judges of Luzerne County, coincidentally including Barry Dyller's wife, the Honorable Lisa Gelb, cannot become the judgment of this Court.  Instead, the Court must grant the requested sanction--an apology--for conduct from these plaintiffs and Barry Dyller during the remand phase of this case.

**3.     Necessary Party Analysis is a Creature of Federal Procedural Law, not as the Carlson Report 1 Mistakenly Posits, a State Law Issue**

Mr. Jauregui joined in MLM's briefing proving that this removal action involves federal procedure.  This fact is no longer in dispute because:

•     "Plaintiffs do not address – and therefore have conceded – MLM's argument that Jauregui is not a necessary or indispensable party for purposes of the Federal Declaratory Judgment Act that applies in this case. (Compare ECF No. 17, §IV.A.iii., pp. 15-16; ECF No. 20, pp. 3-5)."  (Doc. 23, 11).

•     "Here the policyholder/named insured is Jauregui Law Firm, not Jauregui. While Jauregui has a financial interest in this Action, he is not a necessary or indispensable party for Federal Declaratory Judgment Act purposes."  (Doc. 23, 11).

•      "Plaintiffs concede that the Federal Declaratory Judgment Act applies in this case, not the Pennsylvania Declaratory Judgment Act. (ECF No. 20, p. 5)."  (Doc. 23, 17).

Therefore the remand must be denied, under federal law, which the Carlson Report 1 mistakenly ignores; the result of which, by coincidence, no doubt, shifts the burden of analyzing the sanctionable Rule 11 conduct to either Barry Dyller's wife, the Honorable Lisa Gelb, or to her colleagues in the Luzerne County Court of Common Pleas,   The Carlson Reports are entirely wrong, and here they omit these plaintiffs' admissions.  They must be rejected entirely.

**4.      Mr. Jauregui is not a Necessary Party in Under Either Federal or State Procedure Because he is not the Insured**

The lowest common denominator where these lawsuits, their motions to dismiss, and the Carlson Reports agree is that only the insured must be sued.  Yet the record before this Court inescapably shows that Mr. Jauregui is not the insured--the Jauregui Law Firm is the insured.  An actual letter from MLM to Mr. Jauregui stating as much is Exhibit B to Doc. 27.  The Carlson Report 1 completely ignored that fact.  In that context it is a mistake of fact for the Carlson Report to find that Mr. Jauregui is the insured and to recommend that this lawsuit continue against him as a result.  For that reason alone, a dispositive mistake of fact, this case must be dismissed.  Suing Mr. Jauregui is nothing but malice, and this Court should not enable that.

**5.      The Carlson Report 1 Ignored Mr. Jauregui's Arguments and Desires.**

Mr. Jauregui filed a concurrence and joined the arguments that MLM stated in support of both the removal of this action to this Court, and its dismissal.  The Carlson Report 1 completely fails to address Mr. Jauregui's plea.  As such it must be rejected.

## Conclusion

For the foregoing reasons Mr. Jauregui respectfully requests that the Court reject the entirety of the Carlson Reports 1 and 2, proceed to dismiss the plaintiffs' claims with prejudice in both actions, and sanction the plaintiffs and their counsel, Barry Dyller, pursuant to Rule 11.

Respectfully submitted,

_____
Raul Jauregui

Dated: June 16, 2023.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA MCCARTHY, DEVIN MCCARTHY, AND OLUWATOMISIN OLASIMBO, | : : : | |
| Plaintiffs | : | |
| v. | : : | 3:23-cv-00450-RDM |
| | : | |
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY AND RAUL JAUREGUI, | : : : | On removal from Luzerne County NO.: 2023-01805 |
| Defendants | : | |

### Certificate of Service

I Raul Jauregui certify that I served a copy of these objections on the below listed counsel by filing the objections through ECF, and on Magistrate Carlson via email, on June 16, 2023:

Susan French

Hema Mehta

Barry Dyller

Magistrate Carlson

Respectfully submitted,

_____
Raul Jauregui

Dated: June 16, 2023.